# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ELLEN ZAFFIS,**

**Plaintiff,**

-vs-                                    Case No.  6:06-cv-385-Orl-31DAB

**CITY OF ALTAMONTE SPRINGS,**
**FLORIDA and DAVID ARCHAMBAULT,**

**Defendants.**

_____

## ORDER

This cause came on for consideration with oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION FOR SANCTIONS (Doc. No. 80)** |
| **FILED:** | **May 10, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED in part**.

The City seeks sanctions including dismissal of Plaintiff's claims for her obstreperous conduct in blocking production of her mental health records from The Grove Counseling Center, Inc., in contravention of the Court's order for her to sign a HIPAA release by April 23, 2007.  For the reasons that follow, the Court finds that although Plaintiff defied the Court's Order in refusing to sign The Grove Release, the majority of the responsibility for violating the Court's order falls on Plaintiff's counsel, Ronald Kurpiers, Esq., who failed to counsel his client properly and omitted what Plaintiff (and his own staff) had done from contemporaneous filings with the Court.

*Background*

Plaintiff is suing the City and Officer Archambault for excessive use of force in violation of 42 U.S.C. § 1983 for injuries arising from being shot with polyurethane bullets from a Sage SL6 Launcher during what the City contends was a well being check where officers found Plaintiff intoxicated, distraught, and holding a loaded handgun, which she alternatively pointed at various parts of her body.  *See* Doc. No. 54.  Plaintiff admits that she was sitting on her bed drinking wine at the time the police arrived and that she held a handgun by her right side when they broke down her bedroom door, but she denies that she ever threatened the officers with her gun.  Doc. No. 59.

As more fully explained in Defendants' previous Motions to Compel (Doc. Nos. 54, 58, 64), Plaintiff denied at her deposition ever being voluntarily committed to a psychiatric institution prior to the incident described in the Complaint or having substance abuse issues.  However, the City contends Plaintiff's medical records clearly indicate she was involuntarily committed to a psychiatric institution on at least three occasions prior to the incident described in the Complaint and indicate substance abuse.  Central to the damages issues in this case is Plaintiff's mental health and emotional well-being.  The Grove's records are particularly relevant because they are from the time period immediately following the incident in question.

Following an April 17, 2007 hearing on the City's Motion to Compel production of Plaintiff's mental health and psychological/counseling records, the Court found that Defendants were entitled to discovery of the mental health records back to 1989, including those from The Grove Counseling Center[1], and ordered Plaintiff to provide a signed HIPAA release by April 23, 2007 for the records to be produced.  Doc. No. 76.  The City asserts that Plaintiff's counsel finally provided the Release

---

[1]The Grove's letter head states that it is a substance abuse prevention and treatment center.  Doc. No. 80-4.

executed by Plaintiff on May 4, 2007 and the City served the Release on The Grove Counseling

Center, Inc. shortly thereafter.  Doc. No. 80-3.  However, by facsimile dated May 9, 2007, The Grove

stated that it would not produce the records because Plaintiff "denied signing this authorization and

has provided an affidavit affirming that she did not provide said authorization or consent to such

release." Doc. No. 80-4.  The Grove provided a copy of Plaintiff's Affidavit to the City's counsel.

Plaintiff's Affidavit reads:

> May 7, 2007
>
> I, Ellen Zaffis, do affirm that I did not complete an "Authorization and Release for
> Records" for The Grove Counseling Center, Inc. to release records to Dean, Ringers,
> Morgan, and Lawton (Attorneys at Law).  The Authorization and Release for Records
> sent to The Grove Counseling Center, Inc., signed and dated on May 5, 2007 was not
> completed with my consent.
> /s/Ellen M. Zaffis

Doc. No. 80-4 at 3.  To the untrained eye, it appeared Plaintiff's signature on the Affidavit (Doc. No.

80-4 at 3) matched her signature on the Release (Doc. No. 80-3 at 3 - dated May 2, 2007).

Not until May 10, 2007, and after the filing of the City's Motion for Sanctions, did Plaintiff

move (for a *second* time) to protect from production her mental health records from The Grove (in

Doc. No. 83), even though the Court had already ordered Plaintiff to sign the release for The Grove

by April 23, 2007.  Doc. No. 76.  Contemporaneous with denial of Plaintiff's Motion for Protective

Order of The Grove's records, the Court set an evidentiary hearing to determine the source of the The

Grove Release and issues raised in the City's Motion for Sanctions.

In her Motion for Protective Order, and in her Response to the City's Motion for Sanctions,

Plaintiff's counsel omitted any reference or explanation whatsoever as to how The Grove Release

"was not completed with [her] consent."  Instead, Plaintiff argued that she did not want the records

produced because they were "extremely confidential"and "very personal" because they dealt with the

return placement of her minor son through the Department of Children and Families and she feared "Defendant's attorney cannot keep this information confidential." Doc. No. 81 at 2, 5. In her Response to the City's Motion for Sanctions, Plaintiff again omitted any explanation concerning how The Grove Release was completed without her consent. Doc. No. 83.

At the June 12, 2007 Evidentiary Hearing, Plaintiff testified that she never signed The Grove Release. Mr. Kurpiers at the Hearing represented to the Court that, because he had not received Plaintiff's signed HIPAA Releases for the dozen health practitioners sought by the City, he had his staff contact her and fax[2] her the two-page forms for each practitioner and instruct her to fax the form back to his staff. Mr. Kurpiers further represented to the Court that, when his staff "noticed no signature page for The Grove" Release was attached, the staff attached the signature page "they thought she had signed" and sent it out to Defendants. According to Mr. Kurpiers, Zaffis then contacted him to say that she had not signed The Grove Release, and in "trying to correct it" sent her own affidavit to The Grove saying she had not signed the Release.

Plaintiff violated the Court's direct Order for her to sign the HIPAA Release for the Grove by April 23. She is also at fault for not alerting Mr. Kurpiers or his staff *immediately* that she was refusing to sign The Grove Release and, instead, preparing the affidavit on May 7 for The Grove saying she had not signed the affidavit.

Mr. Kurpiers' staff is also at fault for not finding out from Plaintiff why the signature page from The Grove Release was missing, and instead just attaching the signature page from the Release for a different practitioner to The Grove Release.

---

[2] In contrast Mr. Kurpiers stated in the Response to the Motion for Sanctions that "Plaintiff's counsel got the releases to the Defendants as soon as possible, considering the Plaintiff lives in Orlando and the Plaintiff's counsel's office is in Tampa. *Plaintiff's counsel had to mail the releases for signature and then once received,* he forwarded [them] to the Defendants." Doc. No. 83 ¶ 10. The Releases state that "copies of th[e] document will be considered as originals." Def. Ex. 1.

However, most at fault in this unnecessary quagmire surrounding The Grove Release is Mr. Kurpiers, who has failed in his duty to this Court and in his duty to his client.  Particularly given Plaintiff's previous obfuscation of the City's discovery[3] thus far in the litigation, and her extreme reluctance to provide HIPAA Releases to Defendants at all – waiting until May 2 to sign them in spite of a Court Order requiring them by April 23 – Mr. Kurpiers should have contacted Plaintiff himself to assure her compliance with the Court's Order and not relegated this aspect of his attorney responsibilities to  administrative staff.  Mr. Kurpiers also misrepresented to the Court that, "in his Response, he made reference" to these facts.  In reality, as pointed out by Defendants' counsel, Mr. Kurpiers made *no reference whatsoever* to the actual sequence of events in either Plaintiff's Response to the Motion for Sanctions (Doc. No. 83) or in Plaintiff's Motion for Protective Order (Doc. No. 81). Aside from these omissions in the written filings, Mr. Kurpiers could have called Defendants' counsel and explained what had happened.  However, rather than pick up the phone and call Defendants' counsel when he learned Plaintiff had not signed The Grove Release and informed opposing counsel about his staff substituting the signature page for The Grove Release and that he was filing the Motion for Protective Order, Mr. Kurpiers mentioned not **one word** to Defendants' counsel or to the Court about these facts until *after* Plaintiff's fruitless testimony at the Evidentiary Hearing – a waste of the Court's and opposing counsel's time.

More importantly, Mr. Kurpiers' failure to communicate to this Court – despite two opportunities[4] –  what had *actually* happened (his staff filing a substituted signature page for The Grove Release on their own volition) left this Court with the distinct impression that Plaintiff had

---

[3]*See* Doc. Nos. 54 (listing misrepresentations in Plaintiff's deposition versus items in medical records); 58 (relevant deposition excerpts); 76 (ordering production); and Doc. No. Sealed-1 (Plaintiff's medical records filed under seal with the Court, with copies ordered produced to Plaintiff by April 23, 2007).

[4]Doc. No. 81 (filed May 10, 2007) and Doc. No. 83 (filed May 13, 2007).

superficially complied with the Court's Order, then withdrawn her consent and lied about it.  Mr.

Kurpiers' conduct came close to compromising Plaintiff's claims against Defendants, which could

have been dismissed for her putative failure to cooperate in discovery.

Further troubling, now that the Court has reviewed the records from The Grove, is that the

records do contain information directly relevant to the incident at the heart of Plaintiff's case.

Plaintiff discusses the events surrounding the shooting, the identity of the person who allegedly

contacted police that led to their appearance at her home, and prior mental health treatment and

substance abuse issues, which Defendants maintain Plaintiff has denied in other discovery.  For

example, one relevant portion of The Grove counseling record states:

> She began drinking heavily and evidently had several dates with a man and broke it off, and he became very spiteful and vengeful and was calling her and upsetting her . . . then she got a call from the police that he evidently had called up the police and made some threats or something. . . . [O]n the night of July the 8th. . . .she was home alone and had been drinking heavily and evidently this ex-date called the police and said that they had better get over there because she's very drunk and unable to take care of her self and so on, so Ms. Zaffis was home and there was a knock on the door and she didn't realize it was the police and she admitted that she had been drunk and drinking heavily, and she didn't want the door opened.  Well, anyway, the police ended up kicking the door in and she had a small handgun under her pillow and she ended up pointing it at herself threatening to harm herself, and evidently there was an exchange in which she ended up being shot four times with a rifle grenade. . . .
> Ms. Zaffis gives a history of having used drugs for quite some time. . . [B]y 14 she was smoking marijuana . . . and she was a very regular smoker right up until the time of this incident in July. . . .So, putting all this together, Ms. Zaffis has probably had a drug problem most of her life.  She was still functional and could maintain a job. . . .
>
> So she had a drinking and drug problem but remained mostly functional.  The stress of the loss of her home and the children being with grandparents and other things launched her into a drinking binge, and then this terrible incident of being shot and the subsequent events.

Pl. Ex. 1 (Sealed).  Another documents states: "She says she has been Baker Acted by police on two

occasions and Marchman Acted also" *Id*. (2/13/06).

-6-

Mr. Kurpiers and his client have gone to significant lengths[5] to prevent Defendants' access to these potential rebuttal documents.  Pursuant to Federal Rule of Civil Procedure 37, "[a] party's repeated failure to obey the Court's discovery orders may result in a stay of proceedings until the order is obeyed, dismissal of the action or judgment by default, and order for the disobedient party to pay attorney's fees and other reasonable expenses." FED. R. CIV. P. 37(b)(2).

The Court finds it is an appropriate sanction to award the City motion costs related to filing of the Emergency Motion for Sanctions, preparation of the Response to the Third Motion for Protective Order, and attendance at the Evidentiary Hearing.  Costs of $4,000.00, to be paid forthwith, are appropriately assessed against Mr. Kurpiers, Esq. as a sanction for his conduct.

**DONE** and **ORDERED** in Orlando, Florida on June 20, 2007.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[5]Plaintiff's refusal to sign the HIPAA Release and Mr. Kurpiers' decision to file, not one, but two Protective Orders on the issue, the second of which followed a lengthy hearing on the issue.  Despite the significance of his client's concerns about portions of the records, counsel apparently made no effort to obtain and review the records to determine whether sensitive material pertaining to Plaintiff's children could be segregated from comments by Plaintiff concerning the incident in question.  Instead, counsel created the impression that nothing in the records was directly pertinent to the central issues.  The resultant delay in production of the records and the Order to provide them *in toto* could well have been avoided had counsel been more attuned to the particular circumstances of the case.